UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Hormel Foods, LLC,                                    Civil File No. _____
Hormel Foods International Corporation

              Plaintiffs,

vs.

Zwanenberg Food Group (USA), Inc.,

              Defendant.

## COMPLAINT AND JURY DEMAND

Hormel Foods, LLC and Hormel Foods International Corporation, (hereinafter, collectively "Hormel Foods"), by and through their undersigned counsel, for their Complaint against Zwanenberg Food Group (USA), Inc. (hereinafter, "Zwanenberg") state the following.

### THE PARTIES

1.     Hormel Foods, LLC is a limited liability company organized under the laws of the State of Minnesota and has an office and principal place of business at 1 Hormel Place, Austin, Minnesota 55912.

2.     Hormel Foods International Corporation is a corporation organized under the laws of the State of Delaware and has an office and principal place of business at 1 Hormel Place, Austin, Minnesota 55912.

3.     Upon information and belief, Zwanenberg is a corporation organized under the laws of the State of Ohio and has an office and place of business at 3640 Muddy Creek Road, Cincinnati, Ohio, 45238.

## NATURE OF ACTION

4.     This is an action for trademark and trade dress infringement, trademark and trade dress dilution, false designation of origin under the Trademark Act of 1946, as amended (The Lanham Act, 15 U.S.C. §1051 *et seq*.), violation of the Minnesota Deceptive Trade Practices Act at Minn. Stat. § 325D.43 to 325D.48, unfair competition under the common law of the State of Minnesota, and breach of contract.

5.     As set forth below, Zwanenberg has willfully infringed and diluted Hormel Foods' trademarks and trade dress by manufacturing and distributing within the United States and to other countries abroad, meat products in packaging that is confusingly similar to, and a colorable imitation of, Hormel Foods' famous SPAM® trademarks and trade dress.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action under 15 U.S.C. §1121 (actions arising under the Federal Trademark Act), 28 U.S.C. § 1338(a) (acts of Congress relating to trademarks), 28 U.S.C. § 1338(b) (pendent unfair competition claims) and 28 U.S.C. § 1332(a) (diversity of citizenship).  The amount in controversy exceeds $75,000.  The Court has supplemental jurisdiction over the state law and common law claims under 28 U.S.C. § 1367(a).

7.     Venue is proper in this District under 28 U.S.C. § 1391(b) and (c).

8.      This Court has personal jurisdiction over the Zwanenberg by virtue of Zwanenberg's contacts with the State of Minnesota.  Zwanenberg has made sales of the infringing products to Minnesota residents, including sales to Hormel Foods employees in Austin, Minnesota.  Furthermore, Zwanenberg (1) regularly conducts business in this State; (2) has agreed to personal jurisdiction under the parties' Custom Manufacturing Agreement; and (3) has committed acts of infringement, dilution and unfair competition in this State.

### HORMEL FOODS' TRADEMARK AND TRADE DRESS RIGHTS

9.      Hormel Foods is the producer of SPAM® processed meats in the United States and throughout the world.

10.     Hormel Foods owns numerous federal trademark registrations for the SPAM trademark.

11.     In addition, Hormel Foods owns a trademark consisting of yellow lettering on a blue background, as illustrated below (hereafter "Yellow on Blue Mark").



12.     Hormel Foods owns U.S. Trademark Application No. 85/163,762 for the Yellow on Blue Mark for use with meat and poultry.  Hormel Foods has used the Yellow on Blue Mark with its SPAM® products since 1937.

13.     The yellow and blue colors are also featured prominently on the website for SPAM® products, www.SPAM.com, and on promotional materials and advertising for SPAM® products.

14.     In addition to these trademarks, Hormel Foods owns distinctive trade dress for use with its SPAM® products.  The trade dress consists of yellow lettering on a blue background above a depiction of food made with SPAM® products often a SPAMBURGER® hamburger (hereafter "SPAM Trade Dress").  The SPAM Trade Dress is illustrated below:



15.     Hormel Foods has consistently and continuously used the SPAM Trade Dress since 1937.

16.     Hormel Foods' SPAM Trade Dress is inherently distinctive and serves primarily as a designator of origin of meat products emanating from or sponsored or licensed by Hormel Foods.

17.    Furthermore, as a result of the widespread use and display of the SPAM Trade Dress, (a) the public and the trade use the SPAM Trade Dress to identify and refer to Hormel Foods' SPAM® products, (b) the public and the trade recognize that the SPAM Trade Dress refers to a high quality product emanating from a single source, and (c) the SPAM Trade Dress has acquired secondary meaning and extensive good will.

18.    Hormel Foods has produced, to date, <u>7 billion</u> cans of SPAM® products worldwide.  Hormel Foods has spent millions of dollars on advertising and promoting the SPAM brand throughout the world, including the Yellow on Blue Mark and the SPAM Trade Dress.

19.    As a result of long-standing use, the SPAM brand has become a famous American icon.  Its timelessness has earned it roles in films, a fan club and a highly coveted place in the Smithsonian.  The SPAM® products even have a dedicated museum -- the SPAM Museum -- which opened in September 2001.

20.    Hormel Foods, in the past and currently, engages in licensing programs using the famous SPAM brand in connection with numerous ancillary products, including apparel and household items.

## ZWANENBERG'S WRONGFUL CONDUCT

21.    Zwanenberg is well aware of Hormel Foods' Yellow on Blue Mark and SPAM Trade Dress.

22.    Nevertheless, in or around October 2010, Zwanenberg commenced use of a competing product bearing a "Yellow on Blue" design that is confusingly similar to, and a colorable imitation of, Hormel Foods' Yellow on Blue Mark and the SPAM Trade

- 5 -

Dress.  The "Yellow on Blue" design Zwanenberg began using in the latter part of 2010 appears below.



(hereafter "Zwanenberg Yellow on Blue Design").

23.     On October 11, 2010, upon learning of Zwanenberg's use of the Zwanenberg Yellow on Blue Design, Hormel Foods sent a cease and desist letter to Zwanenberg demanding that Zwanenberg cease use of the Zwanenberg Yellow on Blue Design.  A copy of the letter is attached as Exhibit A.

24.     In a letter dated November 1, 2010, Zwanenberg agreed to cease use of the Zwanenberg Yellow on Blue Design.  A copy of the letter is attached as Exhibit B.

25.     Zwanenberg agreed to change the Zwanenberg Yellow on Blue Design to red and white design below:



26.    Shortly thereafter, Zwanenberg began manufacturing a meat product bearing a modified yellow on blue design for sale and export to the Philippines (hereafter "Modified Zwanenberg Yellow on Blue Design").  Upon information and belief, products bearing the Modified Zwanenberg Yellow on Blue Design were manufactured at and sold from Zwanenberg's Cincinnati plant as indicated by the establishment number noted on the can.

27.    The Zwanenberg Modified Yellow on Blue Design appears below.



28.     Like the Zwanenberg Yellow on Blue Design, the Modified Zwanenberg Yellow on Blue Design is confusingly similar to, and a colorable imitation of, Hormel Foods' Yellow on Blue Mark and the SPAM Trade Dress.

29.     Zwanenberg willfully and intentionally adopted the Modified Zwanenberg Yellow on Blue Design with full knowledge of Hormel Foods' rights in the Yellow on Blue Mark and the SPAM Trade Dress, and after agreeing to cease use of the Zwanenberg Yellow on Blue Design.

30.     Zwanenberg's conduct in using the Zwanenberg Yellow on Blue Design and the Modified Zwanenberg Yellow on Blue Design was unauthorized.

31.     Zwanenberg's use of the Zwanenberg Yellow on Blue Design and the Modified Zwanenberg Yellow on Blue Design is a deliberate attempt to trade on the valuable trademark rights and the substantial fame and good will Hormel Foods owns in the Yellow on Blue Mark and the SPAM Trade Dress.

32.     On January 25, 2011, Hormel Foods wrote to Zwanenberg inquiring about the Modified Zwanenberg Yellow on Blue Design.  A copy of the email is attached as Exhibit C.

33.     On January 31, 2011, Zwanenberg responded and claimed that the Modified Zwanenberg Yellow on Blue Design was different than the Zwanenberg Yellow on Blue Design that Zwanenberg agreed to cease selling only two months prior. Attached as Exhibit D is the email response from Zwanenberg to Hormel Foods.

34.     Zwanenberg refused to stop using the Modified Zwanenberg Yellow on Blue Design.

35.     On or about March 14, 2011, Hormel Foods became aware of Zwanenberg products bearing the Modified Zwanenberg Yellow on Blue Design being sold in Okinawa, Japan.  Upon information and belief, the product with the Modified Zwanenberg Yellow on Blue Design that was located in Okinawa, Japan was manufactured at and sold from Zwanenberg's Cincinnati plant through the establishment number on the can.

36.     Hormel Foods, again, sent a cease and desist letter to Zwanenberg demanding that Zwanenberg cease using the Modified Zwanenberg Yellow on Blue Design.  A copy of the letter is attached as Exhibit E.

37.     Despite Hormel Foods' repeated demands, Zwanenberg has refused to cease using the Modified Zwanenberg Yellow on Blue Design, necessitating this lawsuit.

38.     The foregoing allegations are incorporated in the claims below.

## COUNT ONE
## FEDERAL COMMON LAW TRADEMARK INFRINGEMENT
## IN VIOLATION OF 15 U.S.C. § 1125(a)

39.     Hormel Foods re-alleges and incorporates by reference the previous allegations as if fully set forth herein.

40.     Continuously since on or before May 11, 1937, Hormel Foods has used the Yellow on Blue Mark in connection with and to identify its processed meat products and to distinguish said products from similar products offered by other companies.  Hormel Foods has, without limitation, prominently displayed the Yellow on Blue Mark on the can and advertising and promotional materials distributed throughout the United States and the world, including in the State of Minnesota.

41.    Hormel Foods has also used the Yellow on Blue Mark on various other goods, including wearing apparel and household items.

42.    Zwanenberg has infringed Hormel Foods' rights in its Yellow on Blue Mark through various acts, including, without limitation, the selling, offering for sale, promotion and exporting of products bearing the Zwanenberg Yellow on Blue Design and the Modified Zwanenberg Yellow on Blue Design.

43.    Zwanenberg's use of the Zwanenberg Yellow on Blue Design and the Modified Zwanenberg Yellow on Blue Design in connection with canned meats is without permission or authority from Hormel Foods and said use is likely to cause confusion, to cause mistake and/or to deceive.

44.    Zwanenberg's use of the Zwanenberg Yellow on Blue Design and the Modified Zwanenberg Yellow on Blue Design is likely to cause confusion and to cause mistake, and to deceive as to the affiliation, connection or association of Zwanenberg with Hormel Foods and as to the true origin, sponsorship, or approval of Zwanenberg's products and commercial activities by Hormel Foods.

45.    Zwanenberg's unauthorized use of the Zwanenberg Yellow on Blue Design and the Modified Zwanenberg Yellow on Blue Design on labels that are confusingly similar to, and colorable imitations of, Hormel Foods' Yellow on Blue mark constitutes trademark infringement in violation of Section 43(a) of the Lanham Act, to the substantial and irreparable injury of the public and of Hormel Foods' business reputation and good will.

46.     Zwanenberg's infringing activities have caused and, unless enjoined by this Court, will continue to cause, irreparable injury and other damage to Hormel Foods' business, reputation and good will in its Yellow on Blue Mark.  Hormel Foods has no adequate remedy at law.

47.     Hormel Foods has been damaged by Zwanenberg's infringement in an amount to be proven at trial.

## COUNT TWO
## TRADEMARK DILUTION

48.     Hormel Foods re-alleges and incorporates by reference the prior allegations as if fully set forth herein.

49.     The Yellow on Blue Mark is distinctive and famous within the meaning of 15 U.S.C. § 1125(c), and was distinctive and famous prior to Zwanenberg's adoption and use of the Zwanenberg Yellow on Blue Design and the Modified Zwanenberg Yellow on Blue Design.

50.     Zwanenberg's use of the Zwanenberg Yellow on Blue Design and the Modified Zwanenberg Yellow on Blue Design violates 15 U.S.C. § 1125(c), as amended by the Trademark Dilution Revision Act of 2006, in that it is likely to dilute and is diluting the distinctive quality of the Yellow on Blue Mark.

51.     Zwanenberg's use of the Zwanenberg Yellow on Blue Design and the Modified Zwanenberg Yellow on Blue Design is likely to create and has created an association between Zwanenberg's products and Hormel Foods' Yellow on Blue Mark, which impairs the distinctiveness of Hormel Foods' Yellow on Blue Mark and lessens the

capacity of the Yellow on Blue Mark to identify and distinguish products marketed and sold by Hormel Foods.

52.     To the extent that Zwanenberg's products are viewed as being less than satisfactory to consumers, something which Hormel Foods has no ability to control, Hormel Foods' business reputation and good will and the reputation and good will associated with Hormel Foods' Yellow on Blue Mark will be tarnished and injured.

53.     Zwanenberg willfully and in bad faith intended to profit from Hormel Foods' Yellow on Blue Mark by trading upon the valuable reputation of Hormel Foods and causing dilution of the distinctive quality of and tarnishing this famous trademark.

54.     Zwanenberg's conduct as set forth above violates 15 U.S.C. § 1125(c), in that Zwanenberg willfully and in bad faith intended to profit from the Yellow on Blue Mark by trading on the valuable reputation of Hormel Foods and caused dilution of the distinctive quality of the Yellow on Blue Mark.

55.     Zwanenberg's violations of 15 U.S.C. § 1125(c) entitle Hormel Foods to recover damages, including but not limited to, Zwanenberg's profits from the infringing use, actual damages, treble damages, corrective advertising damage, costs of suit, and attorneys' fees.

56.     Zwanenberg's willful and deliberate acts described above have caused irreparable injury to Hormel Foods' good will and reputation, and, unless enjoined, will cause further irreparable injury, for which Hormel Foods has no adequate remedy at law.

## COUNT THREE
## FEDERAL COMMON LAW TRADE DRESS INFRINGEMENT
## IN VIOLATION OF 15 U.S.C. § 1125(a)

57.      Hormel Foods re-alleges and incorporates by reference the previous

allegations as if fully set forth herein.

58.      Continuously since on or before May 11, 1937, Hormel Foods has used the

SPAM Trade Dress in connection with and to identify its processed meat products and to

distinguish said products from similar products offered by other companies.  Hormel

Foods has, without limitation, prominently displayed the SPAM Trade Dress on the can

and advertising and promotional materials distributed throughout the United States and

the world, including in the State of Minnesota.

59.      Hormel Foods has also used the SPAM Trade Dress on various other

goods, including wearing apparel and household items.

60.      Zwanenberg has infringed Hormel Foods' SPAM Trade Dress through

various acts, including, without limitation, the selling, offering for sale, promotion and

exporting of products bearing the Zwanenberg Yellow on Blue Design and the Modified

Zwanenberg Yellow on Blue Design.

61.      Zwanenberg's use of the Zwanenberg Yellow on Blue Design and the

Modified Zwanenberg Yellow on Blue Design in connection with canned meats is

without permission or authority of Hormel Foods and said use is likely to cause

confusion, to cause mistake and/or to deceive.

62.      Zwanenberg's use of the Zwanenberg Yellow on Blue Design and the

Modified Zwanenberg Yellow on Blue Design is likely to cause confusion and to cause

mistake, and to deceive as to the affiliation, connection or association of Zwanenberg with Hormel Foods and as to the true origin, sponsorship, or approval of Zwanenberg's products and commercial activities by Hormel Foods.

63.     Zwanenberg's unauthorized use of the Zwanenberg Yellow on Blue Design and the Modified Zwanenberg Yellow on Blue Design on labels that are confusingly similar to, and colorable imitations of, Hormel Foods' SPAM Trade Dress constitutes trade dress infringement in violation of Section 43(a) of the Lanham Act, to the substantial and irreparable injury of the public and of Hormel Foods' business reputation and good will.

64.     Zwanenberg's infringing activities have caused and, unless enjoined by this Court, will continue to cause, irreparable injury and other damage to Hormel Foods' business, reputation and good will in its SPAM Trade Dress.  Hormel Foods has no adequate remedy at law.

65.     Hormel Foods has been damaged by Zwanenberg's infringement in an amount to be proven at trial.

## COUNT FOUR
## TRADE DRESS DILUTION

66.     Hormel Foods re-alleges and incorporates by reference the prior allegations as if fully set forth herein.

67.     The SPAM Trade Dress is distinctive and famous within the meaning of 15 U.S.C. § 1125(c), and was distinctive and famous prior to Zwanenberg's adoption and

use of the Zwanenberg Yellow on Blue Design and the Modified Zwanenberg Yellow on Blue Design.

68.     Zwanenberg's use of the Zwanenberg Yellow on Blue Design and the Modified Zwanenberg Yellow on Blue Design violates 15 U.S.C. § 1125(c), as amended by the Trademark Dilution Revision Act of 2006, in that it is likely to dilute and is diluting the distinctive quality of the SPAM Trade Dress.

69.     Zwanenberg's use of the Zwanenberg Yellow on Blue Design and the Modified Zwanenberg Yellow on Blue Design is likely to create and has created an association between Zwanenberg's products and Hormel Foods' SPAM Trade Dress, which impairs the distinctiveness of Hormel Foods' SPAM Trade Dress and lessens the capacity of the SPAM Trade Dress to identify and distinguish products marketed and sold by Hormel Foods.

70.     To the extent that Zwanenberg's products are viewed as being less than satisfactory to consumers, something which Hormel Foods has no ability to control, Hormel Foods' business reputation and good will and the reputation and good will associated with Hormel Foods' SPAM Trade Dress will be tarnished and injured.

71.     Zwanenberg willfully and in bad faith intended to profit from Hormel Foods' SPAM Trade Dress by trading upon the valuable reputation of Hormel Foods and causing dilution of the distinctive quality of and tarnishing this famous trade dress.

72.     Zwanenberg's conduct as set forth above violates 15 U.S.C. § 1125(c), in that Zwanenberg willfully and in bad faith intended to profit from the SPAM Trade Dress

by trading on the valuable reputation of Hormel Foods and caused dilution of the distinctive quality of the SPAM Trade Dress.

73.    Zwanenberg's violations of 15 U.S.C. § 1125(c) entitle Hormel Foods to recover damages, including but not limited to, Zwanenberg's profits from the infringing use, actual damages, treble damages, corrective advertising damage, costs of suit, and attorneys' fees.

74.    Zwanenberg's willful and deliberate acts described above have caused irreparable injury to Hormel Foods' good will and reputation, and, unless enjoined, will cause further irreparable injury, for which Hormel Foods has no adequate remedy at law.

## COUNT FIVE
## UNFAIR COMPETITION

75.    Hormel Foods re-alleges and incorporates by reference the prior allegations as if fully set forth herein.

76.    Zwanenberg's activities as stated herein constitute unfair competition and an infringement of Hormel Foods' common law rights in the Yellow on Blue Mark and the SPAM Trade Dress.

77.    Zwanenberg's wrongful and infringing activities have caused, and unless enjoined by this Court will continue to cause, irreparable injury and other damage to Hormel Foods' business, reputation and good will.  Hormel Foods has no adequate remedy at law.

78.    Hormel Foods has been damaged by Zwanenberg's conduct in an amount to be proven at trial.

- 16 -

## COUNT SIX
### VIOLATION OF MINNESOTA DECEPTIVE TRADE PRACTICES ACT

79.    Hormel Foods re-alleges and incorporates by reference the prior allegations as if fully set forth herein.

80.    Hormel Foods' Yellow on Blue Mark and SPAM Trade Dress are "trademarks" as defined in Minn. Stat. § 325D.43.

81.    Zwanenberg's activities alleged herein constitute unfair and deceptive acts and practices in the conduct of its trade and business in violation of the Minnesota Deceptive Trade Practices Act.

82.    Zwanenberg's wrongful and deceptive activities have caused, and unless enjoined by this Court will continue to cause, irreparable injury and other damage to Hormel Foods' business, reputation and good will.

83.    Hormel Foods has no adequate remedy at law.

84.    As a result of Zwanenberg's wrongful conduct, Hormel Foods is entitled to an injunction and an award of attorneys fees under Minn. Stat. § 325D.45.

## COUNT SEVEN
### BREACH OF CONTRACT

85.    Hormel Foods re-alleges and incorporates by reference the prior allegations as if fully set forth herein.

86.    On or about August 1, 2008, Zwanenberg and Hormel Foods entered into a Custom Manufacturing Agreement (hereafter "Agreement").

87.    As part of the Agreement, Zwanenberg agreed to manufacture luncheon meat and chopped pork on behalf of Hormel Foods.

88.     Under the Agreement, Zwanenberg recognized Hormel Foods as the owner of its trademarks and product labels.  Furthermore, Zwanenberg agreed that it "shall not sell to any person any products which have labels or packaging that may, in Hormel Foods' reasonable judgment, be confusingly similar to the labels or packaging of any Products or any other products sold by Hormel Foods."

89.     The consideration set forth in the Agreement was fair and reasonable, and the Agreement is a binding and enforceable contract.

90.     Hormel Foods has performed all conditions, covenants, and promises required by the Agreement.

91.     Zwanenberg breached the Agreement by selling products which have labels and packaging that, in Hormel Foods' reasonable judgment, are confusingly similar to the labels and packaging used on Hormel Foods' SPAM® products.

92.     Hormel Foods demanded that Zwanenberg cease its wrongful conduct and Zwanenberg refused.

93.     Zwanenberg is in breach of the Agreement and Hormel Foods has suffered damages because of Zwanenberg's breach in an amount to be proven at trial.

**JURY DEMAND**

94.     Hormel Foods demands a jury trial.

**WHEREFORE**, Hormel Foods asks the Court to:

1.     Preliminarily and permanently enjoin Zwanenberg and its officers, agents, servants, employees, attorneys, and all those persons in active concert or participation with Zwanenberg from engaging in the following activities:

(a)      Using the Zwanenberg Yellow on Blue Design, the Modified Zwanenberg

Yellow on Blue Design, or any variation thereof, whether alone or in combination with

any other words or elements, or any other mark, name or designation that is confusingly

similar to Hormel Foods' Yellow on Blue Mark or SPAM Trade Dress;

(b)      Advertising, displaying, selling, exporting or otherwise distributing

(whether in paper or electronic form), any and all advertising, marketing or promotional

materials, product packaging, signage, banners, invoices, pamphlets and the like, as well

as any goods, containing the Zwanenberg Yellow on Blue Design, the Modified

Zwanenberg Yellow on Blue Design, or any variation thereof, whether alone or in

combination with any other words or elements, or any other mark, name or designation

that is confusingly similar to Hormel Foods' Yellow on Blue Mark or SPAM Trade

Dress;

(c)      Registering, attempting to register, or maintaining any trademark, trade

name, domain name, trade designation, or other indicia of origin or source containing the

Zwanenberg Yellow on Blue Design, the Modified Zwanenberg Yellow on Blue Design,

or any variation thereof, whether alone or in combination with any other words or

elements, or any other mark, name or designation that is confusingly similar to Hormel

Foods' Yellow on Blue Mark or SPAM Trade Dress;

(d)      Committing any acts or making any statements calculated, or the

reasonably foreseeable consequence of which would be, to infringe Hormel Foods'

Yellow on Blue Mark or SPAM Trade Dress;

(e)     Committing any acts or making any statements calculated, or the reasonably foreseeable consequence of which would be, to infringe any of Hormel Foods' rights in the Yellow on Blue Mark or SPAM Trade Dress, or to confuse, mislead, or deceive customers as to sponsorship, approval or affiliation of Hormel Foods by, with, or of Zwanenberg; and

(f)     Conspiring with, aiding, assisting or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (e) above.

2.     Enter judgment for Hormel Foods on its claims and require Zwanenberg to account to Hormel Foods for Zwanenberg's profits and the actual damages suffered by Hormel Foods as a result of Zwanenberg's acts of infringement, false designation of origin, trademark and trade dress dilution, unfair competition, and unfair and deceptive trade practices, together with interest, and that Hormel Foods' recovery be trebled under Section 35 of the Lanham Act (15 U.S.C. §1117).

3.     Require Zwanenberg to surrender for destruction all name-plates, labels, advertisements, and other materials incorporating or reproducing the infringing Zwanenberg Yellow on Blue Design and the Modified Zwanenberg Yellow on Blue Design, pursuant to Section 36 of the Lanham Act (15 U.S.C. §1118), Section 333.28 *et seq*. and 325D.43 through 325D.48 of the Minnesota Statutes and the equitable power of this Court to enforce the common law of the State of Minnesota.

4.      Enter judgment requiring Zwanenberg to pay Hormel Foods' attorneys' fees, together with costs of this suit, pursuant to Section 35 of the Lanham Act (15 U.S.C. §1117) and Section 333.29 and 325D.45 of Minnesota Statutes.

5.      Grant such other and further relief as may be just and equitable.

Dated:  March 30, 2011                    _s/ Lora M. Friedemann_____
                                          Lora M. Friedemann (#259615)
                                          Laura L. Myers (#387116)
                                          FREDRIKSON & BYRON, P.A.
                                          200 South Sixth Street, Suite 4000
                                          Minneapolis, MN 55402-1425
                                          (612) 492-7185
                                          (612) 492-7077 (fax)

                                          Sarah L. Nelsen (#315801)
                                          Hormel Foods Corporate Services
                                          1 Hormel Place
                                          Austin,  MN  55912
                                          Phone: (507) 437-5936
                                          Fax: (507) 437-5135

                                          **ATTORNEYS FOR PLAINTIFFS**

4901207_2.DOC